Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 5102 | DATE | August 12, 2002 |
| CASE TITLE | Gonzalez v. Barnhart | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiff's Motion for Summary Judgment (doc. #7-1);
Commissioner's Motion for Summary Judgment (doc. #11-1)

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's motion for summary judgment (#7-1) is **GRANTED** to the extent it requests a remand of the ALJ's decision, and the Commissioner's motion for summary judgment (#11-1) is **DENIED**. This cause is remanded to the Commissioner of Social Security for proceedings consistent with this opinion. All pending dates and motions are terminated as moot. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | AUG 14 2002 date docketed | |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials |
| | Copy to judge/magistrate judge. | | |
| JHC | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAMELA GONZALEZ            )
    Plaintiff,          )
                           )
                           )  NO. 01 C 5102
v.                         )
                           )  JUDGE WILLIAM J. HIBBLER
                           )
JO ANNE B. BARNHART, Commissioner )
of Social Security,        )
    Defendant.          )

## MEMORANDUM OPINION AND ORDER

Plaintiff Pamela Gonzalez ("Plaintiff") seeks judicial review of a final administrative decision of the Commissioner of the Social Security Administration ("Commissioner" or "SSA"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §416(i), 423. This Court has jurisdiction to review the Commissioner's denial under 42 U.S.C. 405(g). Pending before the Court are cross-motions for summary judgment by Plaintiff and the Commissioner. For the reasons set forth below, the Court remands this cause for further proceedings consistent with this opinion.

## BACKGROUND

### A. Procedural History

On October 15, 1997, Plaintiff applied for DIB, alleging disability beginning on December 30, 1995, due to a host of conditions, including obsessive compulsive disorder, emphysema, and a possible mild form of Tourettes. (R. 39-41, 46). Her application was denied initially and on reconsideration. (R. 24-25). Plaintiff subsequently requested a hearing, which was held on October 14, 1998 before Administrative Law Judge ("ALJ") Mark S. Anderson. (R. 36-38, 189). Plaintiff, represented by counsel, and a vocational expert (VE) testified at the hearing. On March 11, 1999, the ALJ found that Plaintiff was not entitled to DIB because she maintained the residual functional capacity ("RFC") to perform past

relevant work as a packer of hospital supplies. (R. 8-21). Plaintiff sought review by the Appeals Council, but on May 3, 2001, her request was denied, thereby making the ALJ's decision the final determination of the Commissioner. (R.4-5).

## B. Statement of Facts

### 1. Plaintiff's Testimony at the Hearing

At the time of the hearing, Plaintiff was 32 years old, and was living with her husband and 7-month-old daughter. (R. 195-96). She had a high school education, though with some interruption during her senior year, and a few courses at a community college. (R. 196-99). Plaintiff had 12 different jobs and employers over the past 14 years. (R. 241). She previously worked as a cashier, food service clerk, cake decorator, pharmacy technician, packer of hospital supplies, sorter and maid. (R. 80).

Plaintiff testified to a history of physical ailments including asthma and emphysema. (R. 117). She had also been diagnosed with psychological ailments, primarily obsessive compulsive disorder ("OCD"), but also anxiety and depression. (R. 119, 131, 145). Plaintiff described her symptoms as being too nervous to be around other people and having intrusive thoughts resulting in difficulty concentrating. (R. 46). She mentioned a fear of verbalizing her intrusive thoughts in front of others. (R. 65, 100). To cope with the obsessive thoughts, she would push the bad words to the back of her mind by counting numbers forward and then backwards in order to concentrate. (R. 118). Plaintiff also stated she was obsessed with washing her hands frequently because she feared contamination, and reported feeling depressed, and experiencing poor sleep, and loss of appetite occasionally. (R. 118). However, Plaintiff was able to stay home and care for infant daughter, as well as perform some limited household chores, and cook dinner every day. (R. 228, 231).

From January to October 1995, and during her pregnancy in 1997, Plaintiff saw Dr. Carolyn Linhardt, a therapist. (R. 133-35, 220). In 1997 and 1998, though, Plaintiff was regularly treated by Dr. Harold McGrath, a psychiatrist, for OCD. (R. 220). Dr. McGrath prescribed Risperdal, Wellbutrin, Lorazepam, and Prozac for Plaintiff at various times during treatment. (R. 103, 167-69, 178). Plaintiff also saw several other doctors from time to time to get her prescriptions filled. (R. 47-50, 53-58).

Plaintiff took Luvox regularly for approximately two to three years but stopped in 1997 while she was pregnant. (R. 118). Plaintiff reported having less bad thoughts and better sleep while on Luvox. (R. 118).

*2. Medical Evidence*

In November 1997, at the request of SSA, Dr. R. Mukunda evaluated Plaintiff. (R. 115-117). He noted a history of obsessive compulsive disorder, bruxism and asthma/emphysema, and that Plaintiff was 26 weeks pregnant. (R. 117).

Shortly thereafter, Plaintiff was also evaluated by Dr. Elsy Devassy, M.D. who diagnosed her with obsessive compulsive disorder and depression (R. 118-19). Using a Global Assessment of Functioning (GAF) scale, Dr. Devassy assessed Plaintiff's mental function at 55 to 60.[1] (R. 119). He noted her mood and affect as depressed but not showing signs of delusions, hallucinations, or formal thought disorders. (R. 119). She was oriented to person, place, and time with attention and concentration within normal limits. (R. 119).

In December 1997, Dr. Jerrold Heinrich, Ph.D reviewed Plaintiff's medical records and concluded she had affective and anxiety related disorders. (R. 120). In assessing the severity of Plaintiff's impairment vis-a-vis various functional limitations, Dr. Heinrich rated Plaintiff as only slightly limited in the activities of daily living and moderately limited in social functioning with frequent deficiencies in concentration, persistence or pace. (R. 127). Dr. Heinrich then completed a Mental RFC Assessment, finding Plaintiff had no significant limitations in understanding and memory. (R. 129). However, he did determine Plaintiff was moderately limited in the areas of sustained concentration and persistence, social interaction, and adaptation as related to the following tasks: the ability to carry out detailed directions, to perform activities within a schedule, maintain regular attendance, and be punctual, to work in coordination with others without being distracted by them, to interact appropriately with the

---

[1] A GAF score in the 55-60 range includes "moderate symptoms" such as "flat affect and circumstantial speech, occasional panic attacks," or a "moderate difficulty in social, occupational, or school functions." *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) (DSM-IV), at 32.

general public, to respond appropriately to changes in her work setting, and to travel in unfamiliar places or use public transportation. (R. 129-30). No significant limitations were noted regarding Plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms or perform at a consistent pace without an unreasonable number and length of rest periods, to maintain socially appropriate behavior, to carry out short and simple instructions, and to sustain an ordinary routine without supervision. (R. 129-30). Thus, Dr. Heinrich opined, Plaintiff needed a job that only required simple unskilled tasks in a setting without frequent interactions with others or large groups of people, changes in routine, or travel. (R. 131).

In May 1998, Dr. Kirk Boyenga, Ph.D. likewise evaluated the mental condition of Plaintiff and concluded she suffered from anxiety related disorders. (R. 147). His Mental RFC Assessment of Plaintiff, for the most part, mirrored Dr. Heinrich's analysis. (R. 154). Dr. Boyenga concluded that despite Plaintiff's impaired concentration and adaptive skills, she would still be able to perform simple routine tasks in familiar locations, as evidenced by the fact that Plaintiff completed daily tasks such as cleaning, cooking, shopping, caring for her child, and hobbies such as cross-stitching. (R. 145). Dr. Boyenga also noted that Plaintiff's anxiety disorder never required hospitalization, and that Plaintiff discontinued her medication during pregnancy. (R. 145).

### 3. Vocational Expert Testimony

William J. Schweiks, a vocational expert (VE), testified before the ALJ concerning jobs available for an individual with Plaintiff' age, education, and work experience, who could perform at all exertion levels that did not involve exposure to dust, fumes, or smoke, and where only simple, routine tasks were required in an environment with limited interpersonal contact and little supervision. (R. 239, 245). The VE stated that Plaintiff's' past job as a packer of hospital supplies would accommodate the above described restrictions. (R. 246). He also identified approximately 2,000 jobs in packing, 3,000 to 4,000 jobs in assembly, and 3,000 to 4,000 jobs in visual inspection in the electronics and electronic supply industries locally that would satisfy the same restrictions. (R. 246).

The ALJ then posed a second hypothetical to the VE, again, assuming an individual with

Plaintiff's age, education, and work experience who is able to perform at all exertion levels. (R. 247). The ALJ asked the VE to estimate the number of jobs available if, in addition to the restrictions in the first hypothetical, the individual was occasionally limited in the ability to carry out detailed instructions, to perform activities within a schedule, maintain regular attendance, or be punctual, to work in coordination and proximity with others without distracting them or being distracted by them, to complete a normal workday or workweek without interruptions from psychologically based symptoms, to perform at a consistent pace without an unreasonable number in length of rest periods, to interact appropriately with the general public, to respond appropriately to changes in the work setting, and to travel to unfamiliar places or use public transportation. (R. 247-48). The VE testified that the number of jobs available would depend on the degree of these occasional limitations but in his opinion, the set of limitations would be very restrictive. (R. 248). Specifically, if the occasional limitations could be accommodated by normal breaks or rest periods, then approximately half of the 8,000 to 10,000 jobs he identified in response to the first hypothetical might be available. (R. 249-50). However, if the limitations could not be compensated by breaks occurring roughly every 2 ½ hours, then all jobs would be eliminated. (R. 250).

## C. The ALJ's Decision

Following the five-step sequential analysis set forth in the Social Security regulations[2], the ALJ found Plaintiff had not worked in a substantially gainful position since December 30, 1995. (R. 12). Though Plaintiff had held a couple of jobs since the alleged onset date of disability, the ALJ concluded that her employment was not at a substantially gainful level due to the brief duration and monies

---

[2]Pursuant to 20 C.F.R. § 416.920(a)-(f), the ALJ asks: (1) whether the claimant is currently employed; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one listed by the Secretary; (4) whether the claimant can perform past work; and (5) whether the claimant is capable of performing any work in the national economy. *Allen v. Sullivan*, 977 F.2d 385, 387 (7th Cir. 1992). Once the claimant has satisfied steps one and two, he will be automatically found disabled if he suffers from a listed impairment. *Id.* at 387. If the claimant does not suffer from a listed impairment but can perform past work, the burden shifts to the Secretary to show that the claimant can perform some other job. *Id.* at 387.

-5-

earned. (R. 12). Next, the ALJ found Plaintiff's established diagnosis of OCD to be severe, but concluded it nonetheless failed to meet or equal any of the listing impairments, because, as Dr. Boyenga's evaluation demonstrated, Plaintiff lacked the requisite "B" criteria of either Listing 12.04 or 12.06.[3] (R. 12, 14). At step four, the ALJ assessed Plaintiff's RFC to determine if she could still perform the physical and mental demands of any prior relevant work. (R. 16). The ALJ found Plaintiff's testimony concerning her pain and functional limitations not fully credible because it was not only inconsistent, but also not supported by the medical evidence of record since no treating physician had opined that Plaintiff's OCD prevented her from working. (*Id.*). Consequently, the ALJ explained, he was placing significant weight upon the opinions of Drs. Devassy, Heinrich and Boyenga. (*Id.*). Turning to those medical reports, the ALJ found the functional restrictions reflected the situation depicted in the first hypothetical he posed to the VE. (R. 17). Thus, the ALJ found, Plaintiff could perform her past work as a packer where interpersonal contact was limited and only simple tasks were required. (R. 15-17). The ALJ therefore concluded Plaintiff was not disabled. (R. 18).

## STANDARD OF REVIEW

Establishing disability under the Social Security Act is a two step process. *McBride*, 169 F.Supp.2d at 861. First, the claimant must show that he is suffering from a medically determinable physical or mental impairment, or a combination thereof, which can be expected to last for at least 12 months. 42 U.S.C. §1382c(a)(3)(A). Second, there must be a factual determination as to the impairment, which renders the claimant unable to engage in any substantially gainful employment. *McBride*, 169 F.Supp.2d at 861.

The issue before this Court, though, is not whether plaintiff is disabled, but rather whether the ALJ's finding was supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir.

---

[3] Listings 12.04 (Affective Disorders) and 12.06 (Anxiety Related Disorders) require that claimants satisfy the criteria in both paragraph A (medically document the presence of a particular mental disorder) and paragraph B (demonstrate impairment-related functional limitations on the ability to do basic work activities) in order to meet or equal the listed impairments. *See generally* 20 C.F.R., Pt. 404, Subpt. P, App. 1 at § 12.00A.

1995). A reviewing court cannot re-evaluate facts, reweigh evidence or substitute its own judgment to decide whether a claimant is disabled. *Id.* at 305. Instead, the Court's review of the ALJ's decision is limited to determining whether he applied the correct legal standard and whether there is substantial evidence in the record to support his findings. 42 U.S.C. §405(g); *McBride v. Massanari*, 169 F.Supp.2d 857, 860 (N.D.Ill 2001). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The ALJ's decision will be affirmed if supported by substantial evidence. *See Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994). However, reversal is warranted only if the evidence compels such a finding,, not merely because the evidence may support a contrary decision. *McBride*, 169 F.Supp.2d at 860.

## ANALYSIS

### I.

Plaintiff first argues that the ALJ failed to consider her impairments of depression and anxiety disorder, and the impact those conditions, in addition to her OCD, had on her ability to perform work-related activities. Plaintiff correctly points out that the ALJ must consider all of the evidence and all impairments and their combined impact in analyzing the issue of disability before reaching a decision in a case. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); 20 C.F.R. §404.1523. However, the ALJ is not required to provide a written evaluation of every piece of evidence in his decision so long as he sufficiently articulates his assessment of the medical evidence to assure the reviewing court that he has considered the important evidence. *Herron*, 19 F.3d at 333, *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996), *McBride*, 169 F.Supp.2d at 862. Thus, the mere failure to mention a piece of evidence does not automatically result in reversal or remand. *See Diaz v. Chater*, 55 F.3d 300, 309 (7th Cir. 1995). Indeed, the weight assigned to each piece of evidence still remains within the discretion of the ALJ. *Id.* at 309. However, "[t]he ALJ's analysis of the evidence should provide a rational basis for the denial of benefits," and "build a bridge from the evidence to the conclusion." *McBride*, 169 F. Supp.2d at 861-62. *See also Herron*, 19 F.3d at 333.

In this case, although the ALJ did not specifically discuss depression or anxiety disorder when

analyzing the impact of Plaintiff's impairments, the Court believes he sufficiently articulated his assessment of the medical evidence. First, the ALJ acknowledged Plaintiff's diagnosis of depression in his decision. (R. 13). Furthermore, while the ALJ initially focused on the findings of Dr. Boyenga, who evaluated Plaintiff for OCD, in determining the extent of Plaintiff's limitations resulting from her impairment he later explained, when discussing Plaintiff's RFC, that "the report of Dr. Devassy the consulting psychiatrist is given significant weight as well as the opinions of Dr. Heinrich and Dr. Boyenga the State Agency non-examining psychologist." (R. 16). Both Drs. Boyenga and Heinrich reported that Plaintiff suffered from an anxiety related disorder with "anxiety as the predominant disturbance" (R. 124, 151), while Dr. Heinrich additionally found Plaintiff had an affective disorder, depression. (R. 123). Therefore, by incorporating the findings of the state reviewing psychologists into his assessment of Plaintiff's RFC, the ALJ did indeed consider all of the disorders, OCD, anxiety and depression, that Plaintiff contends limit her ability to work.

Because this Court is able to trace the path of reasoning employed, and is satisfied that the ALJ considered all the important medical evidence in making the disability decision, the Court believes the ALJ has met the minimal articulation standard. *See Diaz*, 55 F.3d at 308. Consequently, Plaintiff's contention that the ALJ erroneously disregarded relevant medical evidence is unfounded.

## II.

However, the Court agrees with Plaintiff that the ALJ's decision does not sufficiently articulate a basis for rejecting the VE's testimony that Plaintiff could not perform any job, and would therefore be disabled, if the occasional limitations raised in hypothetical two could not be compensated by frequent breaks. As noted above, the ALJ relied on the opinions of Drs. Heinrich and Boyenga in assessing Plaintiff's RFC. Dr. Heinrich opined that Plaintiff could work in a job requiring simple unskilled tasks without frequent interaction with others. (R. 131). Likewise, Dr. Boyenga opined that Plaintiff needed a job with simple routine tasks in familiar locations. (R. 145). At the hearing, when the ALJ posed a hypothetical to the VE reflecting those limitations, i.e. simple, routine tasks performed in an environment with limited interpersonal contact or supervision, the VE responded that not only

could Plaintiff perform her past job as a packer of hospital supplies, but there were also 8,000-10,000 other jobs in the economy that could accommodate those restrictions. (R. 239, 245-46). The ALJ rested his finding that Plaintiff was not disabled on the VE's testimony concerning the first hypothetical.

But the ALJ's decision does not even address, let alone discuss, the second hypothetical he posed to the VE. Both Drs. Heinrich and Boyenga noted in their Mental RFC Assessment of Plaintiff that she was moderately limited in several tasks in the areas of sustained concentration and persistence, social interaction, and adaptation. (R. 129-30, 154). In fact, the second hypothetical involved an individual with "occasional" limitations in each and every task Drs. Heinrich and Boyenga had identified as a moderate limitation for Plaintiff. (R. 247-48). The VE then testified that if the occasional limitations could be accommodated by normal breaks or rest periods, then approximately 4,000-5,000 positions might be available; if not, though, then all jobs would be eliminated. (R. 250).

The ALJ offered no explanation whatsoever for his belief that "the vocational expert's testimony [as to the first hypothetical] adequately depicted the claimant's situation." (R. 16-17). In its cross-motion for summary judgment, the Commissioner suggests that the terms "occasional" and "moderate" are not synonymous, and thus the ALJ properly rejected the VE's testimony concerning the second hypothetical individual. However, it is the ALJ's responsibility, not the Commissioner's, to "build an accurate and logical bridge from the evidence to [his] conclusion." *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). Because the ALJ failed to articulate reasons for disregarding the VE's testimony, this Court is unable to evaluate and determine whether substantial evidence existed to support his finding. *See e.g., Herron*, 19 F.3d at 334.

Moreover, this Court also cannot fully evaluate the ALJ's finding that Plaintiff's testimony concerning pain and functional limitations was not credible. (R. 15). The ALJ found that "[h]er testimony was inconsistent and not supported by the objective medical evidence of record," but the exact nature of the inconsistencies is not specified. Certainly the Court can surmise that the ALJ might have found Plaintiff's testimony that her nerves were too bad to work any job at all incredible, in light

of the fact that she managed to take care of her infant daughter every day, as well as cook and clean. But to simply assert that no treating physician has opined that Plaintiff's OCD prevents her from working does not explain why the ALJ disbelieved Plaintiff's testimony. (R. 16). The ALJ must set forth specific reasons for his credibility finding in order to permit the Court to engage in meaningful review of his credibility determination. *See Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

## CONCLUSION

Accordingly, the Court grants Plaintiff's motion for summary judgment to the extent it requests a remand, and denies the Commissioner's motion for summary judgment. This cause is therefore remanded to the Commissioner for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

_____
WILLIAM J. HIBBLER, DISTRICT JUDGE

DATED: August 12, 2002